2-15-0170, People in the City of Oro County, Plaintiff Kathleen B. Rankin A. Gowell, Defendant South, Arguing Monicaptor, Defendant Ellis, Attorney Mr. Alan H. Cooper, Arguing Monicaptor, Plaintiff Kathleen, Attorney Mr. Henry E. Joseph. Both sides ready to proceed? All right, I understand there has been a motion filed for us to take judicial notice basically of additional authority that was cited by the state. Any further comment on that? If not... Your Honor, I have no objection to the motion or the argument this morning. I'm prepared to address the whole case as well. Okay, great. Then we will grant that motion for the record. And then are you both ready to proceed? Yes, Your Honor. All right, you may proceed when you're ready. If you may please, Your Honor. Mr. Gough, by the way. We have raised six issues on appeal on behalf of Mr. Gough. I'm certainly prepared to answer questions with respect to all six that the court might have. However, I would like to use the time available to me to focus on two of the issues. The first is issue one, which is the speedy trial issue. The second is issue five, which is whether the substantial probability to reoffend issue was against the manifest weight of the evidence. With respect to the remaining issues, we will rely on the briefing unless the court has specific questions. Turning first to the speedy trial issue, Mr. Gough languished in the Oval County Jail for ten years plus, awaiting retrial, not initial trial, but retrial on a case which was not terribly complex in the first instance. Judge Hanson expressed that extraordinary delay, his concern about that extraordinary delay, shortly after he got the case. He said, that delay has troubled me from the time I first got this case, and it still troubles me. There's good reason for that troubling. Our contention is that the delays involved in the specific discrete instances that we have pointed out are attributable to the state, and that those delays in total cannot be squared with the Sixth Amendment right to a speedy trial. The rules that govern the speedy trial analysis are well established and not in dispute as between the state and Mr. Gough. They're set forth in the Barker case primarily and in the Doggett case. The state concedes that of the four Barker factors, the length of delay is certainly enough to trigger an inquiry into the rest of the Barker factors. And they also concede the fourth factor, which is that Mr. Gough asserted his right to a speedy trial sufficiently often and sufficiently clearly to satisfy that. The dispute, then, is whether the reasons for the delay and the existence of prejudice, either shown actually or presumed, are sufficient for Mr. Gough to succeed in showing that his speedy trial right has been violated. Let me say first that Barker says, and the state, I think, relies on this in what I've called their scorecard analysis, the state relies on language in Barker that says in determining the speedy trial issues, the court shall look at both the conduct of the prosecution and the conduct of the defendant. That's true. On the other hand, we are not here today saying to the court, here's a ten and a half year period of time for you to look at, and if you look at all that period of time, the period of time attributable to the state is enough to violate the speedy trial. We have identified several discrete instances only in which we are alleging that those instances are solely attributable to the state, the delays are solely attributable to the state, and that taken in total, those discrete instances add up to enough to constitute a violation of the Speedy Trial Act. What was the longest? The longest one was Judge Pemberton's, and to some lesser extent, Judge Hanson's denial of Mr. Gough's right to represent himself. The parties agree, it seems to me, in the briefs, and Judge Hanson acknowledged that that three years plus litigation over whether or not Mr. Gough should be allowed to represent himself was caused, was a result of Mr. Gough's trying to represent himself. And they were very troubled, the trial court was troubled by his behavior, correct? The state was troubled by his behavior. I expect in certain instances the court was too. Mr. Gough did become quite angry and made some insulting remarks at some time, but the state did not, after the fitness issue was resolved and the court said Mr. Delbert is going to stay on as Mr. Gough's attorney even after the fitness issue was over, when the court said that and Mr. Gough objected to it, the court did that in the record based on the court's concerns about whether Mr. Gough was competent to represent himself, not based on, I don't see this as based on disruption. I don't think the record would sustain any finding that Mr. Gough was disruptive to the extent that he caused disruptions, any disruptions caused delays. There was a competence issue. There was a competence issue which was raised improperly and entertained improperly. Not necessarily that the disruptions caused delay, but that the disruptions caused the court to have concern about whether this person would be able to handle himself representing himself. I don't see the court as saying that in the record, Your Honor. The state did say that, but the court I think was concerned with whether he was delusional or something and therefore whether he could represent himself. But once that issue is in the court's mind, isn't there an obligation to resolve it? No. Let me say this. There are probably, Feretta, the case, the Supreme Court case that establishes the basically absolute right to self-representation, there may be an instance in which a person is so clearly incompetent that they can't put together one sentence or something like that, where a court could perhaps require them to be represented by counsel. Maybe. But that is not the case here at all. Mr. Gough filed his own pleadings while they contained insulting language. They were articulately put together. They raised legitimate issues. Mr. Gough was able to handle himself in court. But there's no question that Mr. Gough was able to represent himself. Just look at what happened when we finally did get to trial with Mr. Gough representing himself. But don't we have to look at what the trial court did at the time it did it? Yes. In other words, this is what I knew then. Now, what I would find out in the future, you can say, well, maybe the trial court was wrong, but don't we have to decide what the trial court did at the time it did it with the knowledge that it had at that time? It does. And I would say that the record does not justify Judge Pemberton denying Mr. Gough a right to represent himself. As unwise as that decision may have been by Mr. Gough, the record does not show that Mr. Gough was incapable of representing himself, even if he made mistakes. It never did show that, including any instances in which Mr. Gough may have gotten into disputes with his attorney in the courtroom and so forth. But they were not so severe as to justify a conclusion that he would be denied his constitutional right to represent himself. I thought he physically assaulted him with a pencil or something. What the evidence is on that is somewhat unclear to me, Your Honor. I believe the attorney said that that was the case and the state said that that was the case and Mr. Gough denied that it was the case. Wouldn't that kind of, you know, if the trial judge has to make a call, you have two attorneys saying X happened and the respondent here saying he didn't? The court may well have found that that happened in one instance over a very contentious relationship between Mr. Gough and Mr. Delbert. But even if it did happen, does that one instance justify the court in denying a constitutional right to self-representation, given the whole, all of the facts? In a, having been in that position many times as a prosecutor, obstructionist behavior or bizarre behavior or comments, even in written, not just verbal assaults on a court or on a party or a judge or defense attorney or the prosecutor, it gives a judge pause to, you know, think about should this guy represent himself? Because the judge is concerned with the defendant's or respondent's right to a fair trial, while at the same time trying to preserve his or her right to a speedy trial. So shouldn't we look at that delay as neutral? Because the trial court, in one sense, is trying to protect the constitutional right to a fair trial due process, and on the other hand, balance that delay period against the defendant's right to a speedy trial. I think that analysis flies directly in the face of Feretta and his right to self-representation. It's not an abuse of discretion issue with the court as to whether or not it can say you've got to have counsel or you don't. That's a constitutional right that is almost absolute. Almost. Almost. You conceded earlier that it's a fine line. I don't think it's a fine line. I think there may be a very small number of cases. There are a number of cases or a small number of cases where a defendant should not be representing himself because he's simply not competent to do so. Yes, but I'm talking about somebody who cannot even do the fundamentals of keeping quiet, of putting together words in a sentence or something like that. Beyond that, Feretta seems to say it's pretty much absolute, and Judge Pemberton should not have denied him that right over three years. That's the longest period, I guess, to get back to your initial question. So that's your point, that that three-year delay was unjustified. That three-year delay was totally unjustified, and Judge Hanson found that that three years was caused by this litigation over his right to self-representation. The state has basically conceded that, and that's their brief. They have termed it as the three-year delay caused by the concomitant litigation over Sixth Amendment rights, which would be self-representation and speedy trial. And that, to me, was, and I pointed out, an astonishing statement. You do not have to suffer, you do not waive or give up your right to a speedy trial in order to get your right to self-representation or, to put it the other way, I think I maybe put that backwards this time. You have a right to both, in other words. And Mr. Goff was clearly denied his right of self-representation. That caused a delay, which in itself was a... Let's assume for a minute that delay was unjustified, and maybe the other ones were, too. Does your client have to show actual prejudice to receive relief on this? Let me clear up some, there's some language, semantic issues with the court's question, first of all. And that's with the term actual prejudice. There's actual prejudice and there's specific proof of an impairment of a defense. Those are two different things. Actual prejudice includes oppressive pretrial incarceration and anxiety and concern, both of which are clearly here. Ten years in the Oakland County Jail is enough for those to be satisfied. So the question becomes, is there specific proof of an actual impairment of a defense, that is a defense that couldn't be raised, a witness that couldn't be called any longer, a piece of evidence that couldn't be put in any longer? No, there is no evidence in this case of that. And we've said that. That is not required. And that's one of the errors, I think, in the State's brief is suggesting that actual prejudice in this case, and I've used the term, by which I think they mean specific impairment of defenses, is required. It's not. Doggett rejected that argument altogether. In Doggett, the defendant was indicted and eight years later arrested. He didn't even know he'd been indicted. And so he had no pretrial incarceration prejudice, no anxiety and concern prejudice. And in Doggett, the Supreme Court found that he also didn't prove any impairment of defenses at all. And Doggett held, finally, that the negligence of the government in that case in finding him was enough overall that the presumption of impairment of defenses that is created by a long delay was enough to uphold a speedy trial, finding of a speedy trial violation in his case. In other words, Doggett disposed of the argument that you must show, in any case, actual impairment of a defense. But you're saying that Doggett found a presumptive impairment of defense. That's correct. You're showing no impairment of defense. No, no, let me say no actual. No, I'm showing no proof of an impairment of defense. I am saying there's a presumption, there's presumptive prejudice of an impairment of defense. Yes, I am saying that. If I said otherwise, I misspoke. Okay, so in this case, you're arguing that there is a presumptive impairment. Yes. Even though this delay led to the one and only evaluation that favored your claim. Well, it did do that, that's true. The delays, as the Supreme Court and Barker pointed out, delays in cases like this can impair either side. And so, yes, you're correct that it did have that benefit for Mr. Gauff. Nonetheless, there is a presumption which comes into play, and I guess I'm out of time. Any other questions? I don't have any. You will have a chance for reply, but any final comment on your argument? No, I did want to address the substantial probability. We'll get to that. You mentioned Ferrata. What page of your brief is Ferrata cited at? Can I grab my brief? You can answer that question when you come back up. All right, sure. Good morning. Good morning, Your Honor. Victoria Joseph for the people of the State of Illinois. May it please the Court. Counsel. Before we get into the speedy trial issue, were there any questions the Court had about any of the other issues on appeal that we need to briefly touch on? Okay. I just wanted to leave time to address that if there were any questions. In the speedy trial claim, the defendant notes that we used a scorecard, scoreboard approach, and it is using the language from Barker that you are looking at both the conduct of the defendant and the conduct of the prosecution in what's causing the delays in this trial. We are not at all saying that 10 years is appropriate for a delay in this matter, and we are obviously not contesting that the defendant was adamant with his demands asserting his right. As far as the reasons for the delay, there were so many balancing tasks going on between multiple rights for the defendant against the speedy trial that Your Honors have addressed this morning. We're looking at his right to a speedy trial. We're looking at his right to be compliant with the law. We're looking at a right to a fair trial on both sides, ensuring that somebody who is not incompetent is not being tried without due process. And that is a lot of what was going on. Yes, he was not entitled to a fitness evaluation in this case. He was evaluated by people who did find he could not represent himself. The judge allowed him to go pro se at one point. At that time, the people, as his behavior in both written and oral presentation to the court became more and more questionable, the people did raise the fitness issue. An evaluator, multiple, I think two evaluators found him a pint he was unfit. He was not entitled to that. The judge then cut his appointed counsel from the fitness hearing, saying I did mess up in letting you go pro se before. I shouldn't have let you go pro se at that point. And I think that is, Your Honor, just in Jorgensen, you pointed out that you are looking at what the knowledge of the judges at the time. He was seeing this defendant in the courtroom. And even after he had counseled Delbert, he was removed from the courtroom at least one time. So this wasn't, the disruptions weren't ending at any given point. Did he have an ongoing request to represent himself during that three-year period? Yes, he did, Your Honor. He was denied an inch of returns. He was denied it, I believe, until the eighth motion to substitute counsel or to go pro se. I believe they, if I remember correctly looking at it, the request to go pro se may have started in the second motion, but for the majority of that time he was requesting. The, there is a right to self-representation. The people are not denying that. It has, it is not absolute as it has been limited further by the Supreme Court in either disruptive obstructionist behavior or by levels of incompetence. And the people maintain the judge in good faith was concerned about both the behaviors showing signs of incompetence and an overall incompetence in the defendant to be able to adequately defend himself in court. Yes, he may have ended up doing a very strong job once it came to the time for trial. But at the time that these motions were being denied, he was not yet showing the judge that that was a good decision to let him go pro se. Can you comment on counsel's argument regarding prejudice and the need to show prejudice and the difference between this general oppressive incarceration and the impairment of the defense? Yes, there are, if I understand correctly, the presumption of prejudice becomes stronger the more there is negligence in the case as far as delay. And the less of that that is shown, the more actual prejudice that needs to be shown. The actual prejudice is determined through the three interests the speedy trial is trying to protect. That's the prevention of impressive tree trial incarceration, which we obviously have to concede he was incarcerated the pendency of this case. The minimization of his anxiety and concern about the pending charge. While there is naturally going to be a cause and effect to being incarcerated. I don't believe there was additional anxiety and concern alleged. And the third is the limitation of the possibility that the defense will impair the delay. And it has been held that of the three, that is the most serious when considering those three interests. Here, there was no hindrance of his ability to prepare his case. I believe all the same witnesses who testified at the first trial were able to testify at the second trial. It was very thoroughly cross-examined, very detailed cross-examination of his, the foster daughter who he was remembering details she couldn't even remember. So there wasn't a concern about the delay making it, making people unable to remember information. So you are weighing that total three interests and the judge in this case did. He did say there was a problem with the fact that he was incarcerated for 10 years awaiting trial. At the same time, he did not find any impairment to the actual presentation of the defense. So it is a balancing between the factors within prejudice as well as the four overall Barker factors. And in this case, the judge had only found, had only attributed one delay to the state and that was during the pendency of the fitness evaluation. It did not find that as an intentional delay. And there is nothing in the record to support that it was intentional when the record does show some serious concerns that both the state and the trial judge had in his ability. Delay of the trial court, though, is attributable to the state too. It is. The only. The only. How do you factor that in? Is that negligent? Is that intentional? Is that neutral? When the trial court is not allowing him to represent himself for three years. In this case, Your Honor, I'm. The people would have maintained that it would not be negligent where the defendant's actions were continuing to concern the judge. At minimum, it would be a neutral delay as the defendant was also contributing to part of that delay and continuing to disagree with counsel up until the point that he will say allegedly attacked him in court. And then you say the delay regarding the fitness was negligent? No, it was not found to be intentional. The judge. The judge found that it shouldn't have happened. Therefore, it would seem to lean in the judge's view toward a more negligent finding. It would probably be equated, I believe, in crane. It was in not seeking the mandate for the court to file the mandate. It would probably be more equivalent to that situation where they pursued a course of action that they were not entitled to pursue. What about the other delay that he cites? The Gamses report about six or seven months. Gamses report. The people say there was there was. This was not a negligent delay. Number one, the people kept informed of what was happening with Gamses. They kept reporting to the court. So this wasn't a case where, like crane, where they sat around on the mandate and weren't trying to get it done. There were no pertinent objections from the defendant during this course of the delay. He didn't say, hey, this is taking too long. That is something in Kazmarek that this court can consider. And the fact that he knew this delay was happening, he did not object to the psychiatrist getting the report together. And in Doneth, there was a 21 month delay in getting the report out, which in that case, there was the specific evidence that seven other reports needed tending to. That was found not an intentional delay. Also, the part of this delay was caused because the defendant, again, was not cooperating with the psychiatrist. So he needed to request additional materials. So the defendant was a contributory factor to that delay as well. Wasn't that the same for Stanislaus' report, though? Pretty much every... Didn't she want the same materials? She was able to get the report like seven days later. There were initial materials that both psychiatrists received. I believe after that point, Gamzee went in December. Okay, the request for information was addressed at the end of October. Gamzee then went to jail in December, at which point the defendant refused to talk. At that point, Gamzee made it known that he would be... I can't remember if it was he or she... Would be requesting additional information based on the defendant's lack of cooperation. There was a discussion then that in January of 2012, that additional information... The sending of additional documents, at which point, again, there was no objection to the delay. The court and the parties decided that Stanislaus would not get that additional information because the report was already filed, but the additional information would be sent to Gamzee. And I believe this was... I cannot remember if the defendant had already started not cooperating with counsel in the past, so this was an awareness that counsel had that they may be sending additional information if the defendant continued to refuse to cooperate with the psychiatrists. So in that, this... Where the defendant was partially contributory to that delay, where he did not object to that delay, the people maintained that that did not... Delay that weighed in favor of finding a speedy trial violation. Were there any other specific delays that needed to be addressed? The people asked... Request that this court affirm. Thank you. Thank you. If it pleases the court, the Ferretta, page 43. And in that case, I note that we quoted the Supreme Court in Ferretta as saying that the California courts deprived him of his constitutional right by forcing him to accept against his will the public defender, which is the same situation as here. With respect to the discussion that the court counsel just had about Dr. Gamzee's report, I would point out Dr. Gamzee and Dr. Stanislaus were both appointed on the same day. Mr. Goff refused to meet with both of them. Dr. Stanislaus's report was filed some, I don't know, seven or nine months prior to Dr. Gamzee's report, and the only period that we've included as saying that it's a delay that weighs against the state is the period between the date that Dr. Stanislaus's report was filed and the date that Dr. Gamzee's report was eventually filed. Did the defendant contribute to that delay? I don't see how he did. Not any more than if that would mean by not cooperating with Dr. Gamzee, he also didn't cooperate with Dr. Stanislaus, and her report was filed much earlier. What were the scheduled appointments for the meeting between the doctors and your client at different times? In other words, the failure to cooperate didn't occur on the same day. I don't recall the facts of that offhand, Your Honor. Did Gamzee ask for additional information, or Stanislaus did not? He may have. I believe it may be the case that he did. I don't specifically recall. The bottom line is that your client decides not to cooperate, and you're suggesting that that time during which he was, at least in part, responsible for the delay should be attributable to the state. We'd be rewarding obstructionist behavior if we make that point. No, our position is that the portion of the delay after Dr. Stanislaus filed, there's no reason that Dr. Gamzee couldn't have filed his report at the same time as Dr. Stanislaus, presumably, since he treated them, you know, he didn't cooperate with either one of them. And so what we're saying is that delay, that portion of the delay is attributable. So we parse out that portion. Yes. Yeah, and that's all that we've included in our brief. I would say on the Donuth case that was cited by counsel, in that case, actually, the 21-month delay, the court did find that that delay was not intentional, and we're not saying that the Gamzee delay was intentional, but the court in Donuth said it will not be weighed as heavily against the state as an intentional delay, but it did weigh it against the state, and that's all we're arguing here as well. So I think we're consistent with the Donuth case on that. Our position, just to summarize, is that what the speedy trial analysis shows is that the negligence of the state in filing a legally insufficient motion for fitness and the negligence of the court in entertaining that motion for a period of seven months, the tardiness of Dr. Gamzee in filing his report seven months after Dr. Stanislaus did, the failure of the state legislature and or the state executive to provide a mechanism for licensure of experts after passing an amendment to the act that required licensure, and that caused a seven-month delay, and the negligence, most importantly, the negligence of the court and the state's attorney in failing to recognize that Mr. Goff had a right of self-representation and that the court's denials of his repeated and persistent requests to represent himself for a denial of that right over a period of a long period, something like 48 months. Disregarding overlaps, this delay of something in excess of three years, and actually I think almost four years, is a clear violation of Mr. Goff's Sixth Amendment rights, and we would ask for the relief sought in our brief. Any other questions? Thank you both very much. We will be adjourned for the day.